Donald E. GARTIN, Appellant,

v.

JEFFERSON COUNTY, Iowa, Edwin F. Kelly, Jr., Individually and as Jefferson County Attorney, and Sam Swaim, Appellees.

No. 2–61428.

Court of Appeals of Iowa.

April 26, 1979.

Application for Further Review Denied by Supreme Court June 8, 1979.

Thomas M. Walter, of Barnes & Walter, Ottumwa, for appellant.

Charles E. Miller, of Lane & Waterman, Davenport, for appellee Edwin F. Kelly, Jr.

Gene R. Krekel, of Hirsch, Link, Adams, Hoth & Krekel, Burlington, for appellee Jefferson County and Edwin F. Kelly, Jr.

Pat McNulty, Asst. Atty. Gen., for appellee Sam Swaim.

Heard by OXBERGER, C. J., and SNELL, CARTER and JOHNSON, JJ.

JOHNSON, Judge.

Plaintiff, Donald Gartin, appeals from trial court's dismissal of his petition in an action for malicious prosecution, abuse of process, conspiracy, obstruction of justice, conspiracy to obstruct justice, and denial of civil rights guaranteed by the United States Constitution and federal statute. Trial court dismissed all portions of plaintiff's petition in response to a special appearance entered by defendant Swaim and to motions to dismiss filed by defendants Edwin F. Kelly, Jr., Jefferson County Attorney, and Jefferson County.

In his petition consisting of four divisions, plaintiff alleged, *inter alia*, that defendant Swaim, a state agent for the Bureau of Criminal Investigation, without probable cause and maliciously caused a Preliminary Information to be filed charging plaintiff with subornation of perjury and attempted subornation of perjury for which plaintiff was arrested. Thereafter, plaintiff was indicted by Grand Jury, tried on the charges and acquitted. He further alleged that the indictment was based on unreliable facts and that defendant Kelly, as prosecutor, used previously suborned witnesses to testify falsely against plaintiff at trial.

Plaintiff asserts that trial court erred: 1) in sustaining defendant Swaim's special ap-

pearance based on trial court's finding that it lacked jurisdiction due to plaintiff's failure to file his claim against defendant Swaim as required by Chapter 25A, The Code 1977; 2) in granting defendant Kelly's motion to dismiss based on a claim of absolute immunity as a prosecutor; and 3) in granting defendant Jefferson County's motion to dismiss on the ground that Kelly's absolute immunity as a prosecutor also insured absolute immunity to the county as his employer. We affirm in part and reverse in part.

## I. Error Based on Trial Court's Sustaining Defendant Swaim's Special Appearance

Chapter 25A, The Code 1977, bars suit against a state employee acting within the scope of his or her employment (a fact undisputed in this case) unless an administrative claim has been submitted to the state appeal board and the board has made a final disposition of the claim. § 25A.5, The Code 1977. Plaintiff argues his allegation that defendant Swaim engaged in willful and wanton conduct places the present action outside the purview of chapter 25A and, therefore, permits him to circumvent the requirements of that chapter.[1] We, therefore, must determine whether the present action involves a claim against an employee, as defined by section 25A.2(5)(b), which requires plaintiff to exhaust his administrative remedy before proceeding in court. *See Charles Gabus Ford v. Iowa State Highway Comm'n*, 224 N.W.2d 639, 647 (Iowa 1974).

In proceedings against the State under chapter 25A, it always must be determined to what extent sovereign immunity has been waived. Claims which are outside the scope of the waiver must be denied. *See Megee v. Barnes*, 160 N.W.2d 815, 817 (Iowa 1968). With regard to employees of the state, however, the general rule is that a state officer, agent, or employee is liable personally under common law principles for unauthorized tortious acts committed in performance of official duties except to the

---

1. Plaintiff's petition contains no allegations of negligence or mere wrongful act or omission.

extent that liability is specifically limited by statute. *See Lenth v. Scherg*, 226 Iowa 1, 3, 281 N.W. 510, 511 (1938); 81A C.J.S. *States* § 126 (1978). As a result, prior to 1975, any suit against a state employee was governed by the procedures which govern lawsuits generally. *See e.g., Jones v. Bowers v. Swaim*, 256 N.W.2d 233, 234 (Iowa 1977); *Anderson v. Calamus Community School District*, 174 N.W.2d 643, 644 (Iowa 1970). Chapter 25A was amended effective July 1, 1975, to bring tort claims against any state employee within its provisions.[2] *Jones v. Bowers v. Swaim*, 256 N.W.2d at 234.

Section 25A.2(5)(b) defines "claim" as: [a]ny claim against an employee of the state for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission, *except an act of malfeasance in office or willful and wanton conduct*, of any employee of the state while acting within the scope of his office or employment. (emphasis added)

While the plain language above excludes willful and wanton conduct from the definition of claim, the State contends that its duty to defend and indemnify an employee pursuant to section 25A.21, The Code 1977, as amended by chapter 45, section 1, 1977 Session, 67th G.A.,[3] is dependent upon an employee's act which falls within the definition of claim. Thus, despite the plain language of section 25A.2(5)(b) excluding willful and wanton conduct from the definition of claim, the legislative intent, nonetheless, was to bring such acts within the purview of chapter 25A.

The 1977 amendment to section 25A.21, The Code 1977, states:

[t]he state shall defend and, except in cases of malfeasance in office or willful and wanton conduct, shall indemnify and hold harmless any employee of the state against any claim as defined in section twenty-five A point two (25A.2), subsection five (5), paragraph b, of the Code, including claims arising under the Constitution, statutes, or rules of the United States or of any state.

Literal interpretation of the above language results in the conclusion that the state has neither the duty to defend nor indemnify a state employee if a plaintiff's petition is based on allegations of willful and wanton conduct only unless the definition of "claim" is said to include such conduct. The pertinent language is "[t]he state shall defend and . . . shall indemnify and hold harmless any employee of the state against any claim as defined in section . . . [25A.2(5)(b)] . . . ." To define claim in any other way, the State further argues, would mean that the legislature could have had no purpose in inserting the language "except in cases of malfeasance in office or willful and wanton conduct" in the 1977 amendment because it would result in the following redundancy: "The state shall defend and, except in cases of malfeasance in office or willful and wanton conduct, shall indemnify and hold harmless any employee of the state against any claim . . . [except an act of malfeasance in office or willful and wanton conduct] . . . ."

We conclude, however, from the plain language of section 25A.2(5)(b), that the definition of "claim" does not include willful and wanton conduct and that the apparent redundancy can be resolved by interpreting the language of the 1977 amendment in light of the code section it amended, its explanatory language and section 25A.22, The Code 1977.[4]

Prior to amendment, section 25A.21, The Code 1977, entitled "Officers and employees defended" provided:

**2.** *See* 1975 Session, 67th G.A., ch. 80.

**3.** Now section 25A.21, The Code 1979, hereinafter referred to as the 1977 amendment.

**4.** Section 25A.22, The Code 1979. This section, unlike section 25A.21, has not been amended.

The state *shall defend* any employee of the state, whether elected or appointed *and, except in cases of malfeasance in office*, willful and unauthorized injury to persons or property, *or willful and wanton conduct, shall save harmless and indemnify* such employees of the state *against any tort claim* or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring within the scope of their employment or duties. (emphasis added)

The terms of this section thus make the state's duty to defend an employee broader than its duty to indemnify. The explanatory language of the 1977 amendment stated that it was "[a]n Act relating to indemnification and defense of employees of the state in cases arising under federal or state Constitutions, statutes or regulation and making the Act retroactive [to July 1, 1975]."

We do not believe that the legislature intended to narrow the state's duty to defend by the 1977 amendment. The only reasonable explanation for the changes in the language of section 25A.21, The Code 1977, effected by the amendment, is that the legislature intended expressly to extend the state's duty to defend and indemnify in state proceedings to cases involving constitutional and statutory actions as well as common law tort actions.

Support for this interpretation also is found by examining the language of section 25A.22, which requires the state to "defend, indemnify and hold harmless an employee of the state in any action commenced in federal court under section 1983 . . . against the employee for acts . . . [committed] . . . in the scope of employment." The state has no duty under this section to indemnify or hold harmless the employee if the action is based on the exceptions to claims as defined in section

25A.2(5)(b). This exception could only have reference to malfeasance in office or willful and wanton conduct.

The apparent redundancy which the state asserts would result if willful and wanton conduct is not included in the definition of claim thus is more logically the result of legislative drafting which combined the language of section 25A.21, The Code 1977, with "exceptions to claims" language of section 25A.22.

We find that the Appeals Board has primary or exclusive jurisdiction, which would require a plaintiff to exhaust his or her administrative remedy under chapter 25A, only in those actions with could result in the state's liability through the duty to indemnify its employee on a claim. This duty does not extend to actions based on willful and wanton conduct.[5] Requiring plaintiff to file a claim with the board of appeal which that body has no authority to consider, and upon which no relief could be granted, would establish a meaningless, time-consuming, cost-generating act as a condition precedent to bringing suit based on conduct of the type alleged in the present case and would defeat the very purpose underlying the doctrine of exhaustion of administrative remedies. *See Charles Gabus Ford v. Iowa State Highway Comm'n*, 224 N.W.2d at 648. We cannot conclude that the legislature intended in this manner to limit direct access to the court for adjudication of a claim based solely on allegations of willful and wanton conduct.[6] We also conclude that the legislature did not intend to require this administrative process simply as a means of providing the state with notice in an action where its only duty is to defend.

We, therefore, reverse that portion of trial court's judgment sustaining defendant Swaim's special appearance.

---

5. The last sentence of section 25A.8 also suggests that claims not permitted under chapter 25A are not affected by the limitations of that chapter.

6. We express no view regarding the proper procedure in a case in which plaintiff files a direct suit where the petition alleges acts which are both within and without the definition of "claim" in section 25A.2(5)(b).

## II. Error Based on Trial Court's Sustaining Defendant Kelly's Motion to Dismiss

Trial court dismissed plaintiff's petition as to defendant Kelly based on a finding that no relief could be granted since Kelly, as Jefferson County Attorney, is absolutely immune for acts within the scope of his prosecutorial duties. A motion to dismiss for failure to state a claim upon which relief can be granted is sustainable only when it appears to a certainty that the pleader has stated no claim which would entitle him or her to relief under any state of facts which could be proved in support of the claim. *Lewis v. State*, 256 N.W.2d 181, 192 (Iowa 1977). The pleadings are construed in the light most favorable to the pleader and all doubts resolved in his or her favor. *Id.* at 193. Since absolute immunity would be a bar to any relief for plaintiff, we must decide whether Kelly, under the facts alleged, is entitled to such immunity.

Plaintiff agrees that absolute immunity is granted to prosecutors by *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and *Blanton v. Barrick*, 258 N.W.2d 306 (Iowa 1977). He argues, however, that these cases do not apply to the present action because such immunity is limited by *Imbler* to alleged wrongful acts "intimately associated with the judicial phase of the criminal process" which are performed by the prosecutor as an advocate in initiating a prosecution and in presenting the State's case. *Imbler v. Pachtman*, 424 U.S. at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143. Plaintiff asserts that his petition alleges some acts which occurred prior to the initiation of the criminal process and, therefore, were performed by defendant Kelly in an investigative or administrative capacity and thus would entitle defendant Kelly to a qualified privilege only.[7]

*Imbler* recognizes that the prosecutor's role as an advocate involves "actions preliminary to the initiation of a prosecution" and that the prosecutor, at some point functions as an administrator. *Id.* at 431 n. 33, 96 S.Ct. at 995, 47 L.Ed.2d at 144.[8] The Court concluded, however, that the case before it did not present an occasion to consider whether the policy reasons for granting immunity to the judicial aspects of the prosecutorial function also require immunity for those aspects of a prosecutor's responsibility which are administrative or investigative in nature. It also should be noted that the Court in *Imbler* recognized, without approving either, the distinction drawn by the lower court in that case wherein the "focus [was] upon the functional nature of the activities rather than the respondent's status . . . ." *Id.* at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143.[9]

The Supreme Court of Iowa did not expressly adopt either the status of functional analysis in *Blanton*. The court did say,

---

7. A qualified privilege is lost if the acts alleged are not performed in good faith. Plaintiff alleges defendant Kelly's initiation and pursuit of the prosecution against plaintiff was done solely to harass plaintiff.

8. In footnote 33, the Court states that "[p]reparation, both for the initiation of the criminal process and for a trial, may require obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them." 424 U.S. at 431, 96 S.Ct. at 995, 47 L.Ed.2d at 143.

9. *Imbler v. Pachtman*, 500 F.2d 1301 (9th Cir. 1974). Using a status analysis, absolute immunity encompasses all acts which are part of the prosecutor's official activities. *Kostal v. Stoner*, 292 F.2d 492 (10th Cir. 1961). *See e. g.*, *Carmack v. Gibson*, 363 F.2d 862 (5th Cir. 1966); *Hurlburt v. Graham*, 323 F.2d 723 (6th Cir. 1963); *Kostal v. Stoner*, 292 F.2d 492 (10th Cir. 1961). Under a functional analysis, the court analyzes each duty of the official to determine whether it is sufficiently judicial in nature to justify a grant of absolute immunity. *See e. g., Briggs v. Goodwin*, 186 U.S.App.D.C. 179, 569 F.2d 10 (1977) *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973) *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *Dodd v. Spokane County, Washington*, 393 F.2d 330 (9th Cir. 1968).

however, "[c]learly . . . prosecutors performing their official duties are quasi-judicial officials, not non-judicial functionaries and should be able to vigorously proceed with their tasks unhampered by the fear of unlimited civil litigation." *Blanton v. Barrick,* 258 N.W.2d at 309.[10]

■ We conclude on the authority of *Blanton* that prosecutors in Iowa are immune from liability for the official acts and that plaintiff's petition alleges acts which were performed by defendant Kelly pursuant to his official duties. Trial court, therefore, was correct in sustaining his motion to dismiss.

### III. Error Based on Trial Court's Sustaining Defendant Jefferson County's Motion to Dismiss

Trial court sustained defendant Jefferson County's motion to dismiss on the basis of the absolute immunity granted to defendant Kelly. Plaintiff contends that, despite Kelly's prosecutorial immunity, the county should be liable for actions performed by Kelly within the scope and course of his employment. Due to the fact there is no Iowa case addressing the issue of municipality immunity where the employee is granted absolute immunity, we must base our decision on other authority.

*Jahnke v. City of Des Moines,* 191 N.W.2d 780 (Iowa 1971), holds that section 613A.2 imposes liability upon a municipality for all torts of its employees acting within the scope of their employment or duties.[11] *Id.* at 782. Section 613A.8, The Code 1977,

states that the municipality must defend tort actions brought against any of its employees and, "except in cases of malfeasance in office, willful and unauthorized injury to persons or property, or willful or wanton neglect of duty," indemnify such employees, including cases arising under 42 U.S.C. § 1983.

■ *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), holds that a municipality can be sued directly under 42 U.S.C. § 1983. However, the Court states, while liability may be imposed on a government which causes an employee to violate another's constitutional rights under some official policy, "that language [of § 1983] cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." 436 U.S. at 692, 98 S.Ct. at 2036.[12] Plaintiff's allegations against defendant Jefferson County rest solely on the principle of respondeat superior. Thus, even though the county now is held to be "a person" amenable to direct suit within the meaning of § 1983, it cannot be liable for that portion of plaintiff's alleged damages arising under that section.

■ The question still remains, as to plaintiff's other allegations, whether the policy reasons for extending prosecutorial immunity also should apply to the county. Plaintiff, of course, argues they should not.

Cases from other jurisdictions have held the state or county is immune if the prose-

---

10. The opinion also states that "[s]ince *Imbler* numerous jurisdictions have adhered to its ruling and hold a prosecutor is absolutely immune where his acts are within the scope of prosecutorial duties, particularly 'initiating a prosecution.'" *Id.* at 310. Dictum in *Webster County Board of Supervisors v. Flattery,* 268 N.W.2d 869, 877 (Iowa 1978), states that "[t]here is authority for holding the investigatory functions of a prosecuting attorney are quasi-judicial, at least to the extent of extending judicial immunity protection."

11. Section 613A.4 lists the exceptions to liability, none of which is applicable to the instant case.

12. The court expresses no view on the scope of a municipality's direct liability for official policy allegedly violative of § 1983 beyond stating that such bodies sued under § 1983 could not be entitled to absolute immunity. 436 U.S. at 701, 98 S.Ct. 2018. The court in *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978), adopts an intentional, reckless or gross negligence standard of culpability.

cutor is immune. *See e.g., State ex rel. Department of Justice v. District Court,* 560 P.2d 1328 (Mont.1976), and *Creelman v. Svenning,* 67 Wash.2d 882, 410 P.2d 606 (1966). The Washington court stated the reason for the rule as follows:

> The public policy which requires immunity for the prosecuting attorney, also requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the duties which rest upon them; otherwise, the objectives sought by immunity to the individual officers would be seriously impaired or destroyed. If the prosecutor must weigh the possibilities of precipitating tort litigation involving the county and the state against his action in [the] criminal case, his freedom and independence in proceeding with criminal prosecutions will be at an end. The public advantage of free, independent, and untrammeled action by the prosecuting attorney outweighs the disadvantage to the private citizen in the rare instance where he might otherwise have an action against the county and state, either or both.

410 P.2d at 608.

We find these reasons to be persuasive, especially when considered in conjunction with *Monell* and the provisions of section 613A.8 which exempts the county from the duty to indemnify the employee if liability is established under the type of facts alleged in plaintiff's petition.[13] Trial court properly sustained Jefferson County's motion to dismiss.

The judgment of trial court is affirmed in part and reversed in part.

AFFIRMED IN PART; REVERSED IN PART.

DONIELSON, J., takes no part.

13. It would be illogical to relieve the county from a duty to indemnify its employee for certain willful acts but permit direct suit against the county by a plaintiff on the theory of respondeat superior.