**Eldon F. BURR, Appellant,**

v.

**CITY OF CEDAR RAPIDS, Iowa, a Municipality, Cedar Rapids Public Safety Commission, Cedar Rapids Police Department, Douglas Fuller, Denton Schultz, The State of Iowa, Iowa Department of Public Safety, B.C.I. Criminalistics Laboratory, James Dahlgran, Linn County, and John H. Ehrhart, Appellees.**

No. 62853.

Supreme Court of Iowa.

Dec. 19, 1979.

J. D. Merris and Joseph C. Johnston, Iowa City, for appellant.

Raymond R. Stefani, of Silliman, Gray & Stapleton, Cedar Rapids, and Glenn L. Johnson, Asst. Linn County Atty., for appellees Ehrhart and Linn County.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, ALLBEE and LARSON, JJ.

REYNOLDSON, Chief Justice.

Plaintiff brought action against a number of defendants he alleged were responsi-

ble in damages for his 1978 arrest and prosecution for attempted murder. The criminal action was dismissed on the ground of insufficient evidence. Trial court sustained a motion to dismiss the petition as to Linn County and John Ehrhart, an assistant Linn County attorney. Plaintiff appeals, challenging district court's ruling that Ehrhart's status as assistant county attorney rendered him absolutely immune from civil liability for allegedly false sworn statements he made when the complaint and information were signed and acknowledged. We affirm district court's ruling dismissing plaintiff's petition as against these defendants.

Only counts III and IV of plaintiff's initial four-count petition were directed specifically against defendants Ehrhart and Linn County.[1] Count III, our primary concern in this appeal,[2] alleged that Ehrhart initiated the criminal proceedings against him by signing and acknowledging the Complaint and County Attorney's Information, that the complaint contained statements displaying "a reckless disregard for the truth" and no probable cause existed to bring the criminal action, that the action had been dismissed on the ground of insufficient evidence, and that defendants' conduct was intentional and malicious. Plaintiff does not complain of any separate county conduct.

Although plaintiff both requested permission to take an interlocutory appeal from the dismissal order and filed a timely notice of appeal asserting the order was a final judgment as to these defendants, we hold, on the basis of events which need not be related here, that this is an appeal from final judgment taken pursuant to Iowa R.App.P. 1.

I. In dismissing the malicious prosecution action, district court ruled that "the Defendants Ehrhart and Linn County, Iowa, [were] performing their official duties [and] are quasi-judicial officials and

not non-judicial functionaries and have immunity from civil liability . . . ." Plaintiff counters that Ehrhart, in signing a complaint swearing to the existence of certain facts, performed a law enforcement rather than a quasi-judicial function. He asserts Ehrhart therefore was not entitled to absolute immunity but only to the protection afforded a police officer: A qualified immunity such that a good faith belief in the truth of the facts sworn to would be a defense.

On the alleged facts before us, we reject the functional classification labels which plaintiff attaches to Ehrhart's acts. The leading prosecutorial immunity case is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The *Imbler* Court held that a prosecutor's activities which are "intimately associated with the judicial phase of the criminal process [are] functions to which the reasons for absolute immunity apply with full force." *Id.* at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143. Observing that "[t]he function of a prosecutor that most often invites a common-law tort action is his decision to *initiate* a prosecution," *id.* at 421, 96 S.Ct. at 990, 47 L.Ed.2d at 138 (emphasis added), the Court explained the policy considerations behind its decision:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency; for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. . . . [I]f the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the

---

1. We hereinafter refer to Linn County and John Ehrhart as defendants, to be distinguished from the state-level and city-level defendants who are not involved in this appeal.

2. Count IV sought expungement of all records of plaintiff's arrest and prosecution.

pressing duty of enforcing the criminal law.

.·. . . . It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of *qualified* immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions . . . could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

. . . . .

The affording of only a qualified immunity to the prosecutor also could have an adverse effect upon the functioning of the criminal justice system.

*Id.* at 424–26, 96 S.Ct. at 992–93, 47 L.Ed.2d at 140–41 (emphasis added and citations omitted).[3]

We followed *Imbler* in *Blanton v. Barrick*, 258 N.W.2d 306, 309 (Iowa 1977). We there held that "prosecutors, as quasi-judicial officers, . . . are generally cloaked with the same immunity afforded judges *when their duties are primarily judicial—the filing and vigorous prosecution of criminal charges.*" *Id.* at 308 (emphasis added and citations omitted). We stated prosecutors performing their official duties are quasi-judicial officials, not nonjudicial functionaries, and should be able vigorously to proceed with their tasks unhampered by the fear of unlimited civil litigation. *Id.* at 309. *See also Gartin v. Jefferson County*, 281 N.W.2d 25, 29–30 (Iowa Ct.App.1979) (prosecutors held to be absolutely immune from liability for "official acts"). *See generally* 63 Am.Jur.2d *Prosecuting Attorneys* § 34, at 361–62 (1972). Although *Blanton* and *Gartin* involved county attorneys, in this context we find no reason to provide a different rule for an assistant county attorney.

Implicit in *Imbler* and *Blanton* is a concern with the functional purpose of the activity under scrutiny. Recognizing this, plaintiff attempts to distinguish these decisions by asserting absolute immunity from civil liability attaches only to judicial or quasi-judicial functions. He asserts signing a complaint is not such a quasi-judicial function, relying chiefly upon *Briggs v. Goodwin*, 186 U.S.App.D.C. 179, 569 F.2d 10 (D.C. Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

Plaintiff's reliance upon *Briggs* is misplaced. That case involved a "Special Attorney for the investigation and prosecution of certain federal crimes," *id.* 186 U.S.App. D.C. at 182, 569 F.2d at 13, who allegedly falsely testified that none of the witnesses before a grand jury were agents of, or informants for, the federal government. The court of appeals held the defendant prosecutor's immunity to be only qualified, *id.* 186 U.S.App.D.C. at 185, 569 F.2d at 16, relying on cases distinguishing a prosecutor's role as advocate from his or her role as an administrative or investigative officer. *Id.* 186 U.S.App.D.C. at 189, 569 F.2d at 20 (string citation). However, each case the *Briggs* court relied upon involved investigative activities, such as directing police activity, planning police raids, obtaining search warrants, and supervising investigations. As the court of appeals made clear, testimony in a grand jury proceeding, which the court characterized as "*a broad scale investigation* into possible illegal activity," *id.* 186 U.S.App.D.C. at 193, 569 F.2d at 24 (emphasis added), is not analogous to "prosecutorial acts which unquestionably qualify for immunity under *Imbler, e. g.*, the decision to *initiate* a criminal prosecution." *Id.* 186 U.S.App.D.C. at 191, 569 F.2d at 22 (emphasis added).

Section 801.4(12), The Code, defines "prosecution":

"*Prosecution*" means the commencement, *including the filing of a complaint,*

---

**3.** The *Imbler* Court did not address the scope of a prosecutor's immunity when he or she functions in an administrative or investigative role; the holding was limited to situations where the

prosecutor is "*initiating a prosecution* [or] presenting the State's case." *Id.* at 430–31, 96 S.Ct. at 995, 47 L.Ed.2d at 143–44 (emphasis added).

and continuance of a criminal proceeding, and pursuit of that proceeding to final judgment on behalf of the state or other political subdivision.

(Emphasis added.) A complaint is a prosecutorial document which initiates formal criminal proceedings against an individual. § 804.1, The Code. Signing and filing a complaint is the outward manifestation of the decision to initiate criminal proceedings against someone. It is precisely this activity which the absolute immunity doctrine protects from the threat of civil litigation. *See Powell v. Seay,* 553 P.2d 161, 163–64 (Okla.1976) (district attorney's act in filing *complaint* was a prosecutorial rather than police function; prosecutor held absolutely immune from civil liability although petition alleged charges were brought maliciously and without justifiable cause).

"Under a motion to dismiss, the question is whether 'it appears to a certainty a plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claims asserted by him.'" *Symmonds v. Chicago, Milwaukee, St. Paul & Pacific Railroad,* 242 N.W.2d 262, 263 (Iowa 1976), *quoting Bindel v. Iowa Manufacturing Co.,* 197 N.W.2d 552, 555 (Iowa 1972). *See also Gartin,* 281 N.W.2d at 29. Taking plaintiff's allegations as true, he still is not entitled to relief. Signing and filing a complaint or information, including making the requisite oath or affirmation, are acts "intimately associated with the judicial phase of the criminal process" and functions "to which the reasons for absolute immunity apply with full force." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143. Prosecutorial immunity protects defendant Ehrhart.

■ II. The question remains whether this immunity should also be extended to defendant Linn County. The Iowa Court of Appeals recently explored the policy considerations involved:

The public policy which requires immunity for the prosecuting attorney, also requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the

duties which rest upon them; otherwise, the objectives sought by immunity to the individual officers would be seriously impaired or destroyed. If the prosecutor must weigh the possibilities of precipitating tort litigation involving the county and the state against his action in [the] criminal case, his freedom and independence in proceeding with criminal prosecutions will be at an end. The public advantage of free, independent, and untrammeled action by the prosecuting attorney outweighs the disadvantage to the private citizen in the rare instance where he might otherwise have an action against the county and state, either or both.

*Gartin,* 281 N.W.2d at 31, *quoting Creelman v. Svenning,* 67 Wash.2d 882, 885, 410 P.2d 606, 608 (1966). *See also State ex rel. Department of Justice v. District Court,* Mont., 560 P.2d 1328, 1330 (1976) (immunity of attorney general extends to state and its agencies).

We are persuaded by this rationale. District court rightly dismissed plaintiff's petition as against defendant county.

The ruling dismissing plaintiff's petition as against defendants John Ehrhart and Linn County is affirmed.

AFFIRMED.