Keith W. HIKE, Appellee,

v.

Patrick HALL and Barry Bruner,
Defendants–Appellants,

and

Blane Steffes, Defendant.

No. 87–1021.

Supreme Court of Iowa.

July 20, 1988.

D.R. Franck of Franck, Mundt, Nepper &
Franck, Denison, for defendants-appellants.

Raymond O. Snook, Glidden, for appellee.

Considered by SCHULTZ, P.J., and
CARTER, NEUMAN, SNELL and
ANDREASEN, JJ.

SNELL, Justice.

On January 26, 1987, Keith W. Hike filed
a petition in three divisions seeking com-
pensatory and punitive damages for the
alleged deprivation of his civil rights and
for common law fraud. These allegations
arise from the handling of a prosecution
against Hike for criminal mischief in con-
nection with a vehicle collision. Division
one of Hike's petition named Assistant Car-
roll County Attorney Patrick Hall as a de-
fendant and sought damages under 42 U.S.
C. section 1983. This statute was also used
as the ground for relief in division two
which named Carroll County Attorney Bar-
ry Bruner as a defendant. Division three
alleged common law fraud and named Hall
and Blane Steffes, the owner of the vehicle
allegedly struck by Hike, as defendants.

Hall and Bruner filed motions for sum-
mary judgment, claiming absolute prosecu-
torial immunity. The district court denied
the motion as to divisions one and two but
granted it as concerns the allegations made
against Hall in division three. We allowed
the interlocutory appeal of Hall and Brun-

er. Although Hike has filed a notice of cross-appeal, he has failed to timely file an appellate brief. We consequently deem his cross-appeal waived. *Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 178 (Iowa 1987); Iowa R.App.P. 13(f), 19(a). Likewise, we strike Hike's appellee's brief due to its belated filing. *Jefferson County v. Barton–Douglas Contractors, Inc.*, 282 N.W.2d 155, 157 (Iowa 1979).

## I. *Our Standards of Review.*

Our review is limited by well-established standards. Iowa Rule of Civil Procedure 237(c) provides that summary judgment

> shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In reviewing the grant or denial of summary judgment under this rule, the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Suss v. Schammel*, 375 N.W.2d 252, 254 (Iowa 1985); *Brown v. Monticello State Bank*, 360 N.W.2d 81, 83–84 (Iowa 1984). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). We examine the record in a light most favorable to the party opposing the motion for summary judgment to determine if movant met his or her burden. *Matherly v. Hanson*, 359 N.W.2d 450, 453 (Iowa 1984).

## II. *Prosecutorial Immunity.*

In *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128, 143 (1976), the United States Supreme Court, drawing on the absolute immunity from civil suit afforded to judges in the performance of their judicial duties, established that prosecuting attorneys' activities which are "intimately associated with the judicial phase of the criminal process [are] functions to which the reasons for absolute immunity apply with full force." Consequently, *Imbler* extended absolute immunity from civil damages in actions under 42 U.S.C. § 1983 to a state prosecutor whose performance of these activities was challenged. *Id.* at 424–32, 96 S.Ct. at 992–95, 47 L.Ed.2d at 140–44. We followed the *Imbler* rationale in *Blanton v. Barrick*, 258 N.W.2d 306 (Iowa 1977), *Burr v. City of Cedar Rapids*, 286 N.W.2d 393 (Iowa 1979) and *Moser v. Black Hawk County*, 300 N.W.2d 150 (Iowa 1981). The immunity's application is a function of the specific activities engaged in by a prosecutor, and does not attach simply by virtue of the civil defendant's status as a prosecutor. *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143. In *Blanton*, *Burr*, and *Moser* we held these activities to include the initation of criminal prosecutions. Given the activity-specific nature of the pertinent analysis, we discuss separately the allegations made by Hike.

■ A. *Defendant Hall.* According to Hike's petition he met Assistant County Attorney Hall at the Carroll County courthouse on the day set for the preliminary hearing on the criminal mischief charge. Accompanying Hall was Blane Steffes, the owner of the vehicle which Hike had allegedly struck. Instead of proceeding with the hearing, Hall allegedly instructed Hike and Steffes to attempt a settlement, the achievement of which Hall stated would result in the dismissal of the charges against Hike.

The petition claims that at the time Hall arranged for this settlement conference, he was also representing Steffes in connection with a civil matter arising from another collision involving the same vehicle in-

volved in the criminal mischief charge. Steffes demanded, as conditions for settlement, that Hike pay him $1000 and agree to testify as Steffes' witness in the above-mentioned civil matter. Hike claims that Hall knew the charges filed against Hike were without merit and that the settlement amount demanded by Steffes exceeded the value of the vehicle. Nevertheless, Hike apparently agreed to the settlement.

Hall allegedly then entered an "order" in the criminal file, deferring prosecution for six months, stating that Hike was to pay Steffes $1000 and providing that Hike was to pay court costs. Hall allegedly then told Hike that the charges would be dropped when the $1000 was paid to Steffes. Judgment was entered against Hike for costs, but not for the $1000. These costs, but not the $1000, have been paid by Hike.

As we read Hike's petition in a light most favorable to him, the gist of his complaint against Hall is that, knowing the charges against Hike had no basis, he used the persuasive power inherent in his claimed ability to drop or continue the charges as leverage to obtain a favorable settlement for the alleged victim of the criminal mischief, who Hall also represented in an associated civil matter. In *McGruder v. Necaise*, 733 F.2d 1146 (5th Cir.1984), the court was presented with a substantially similar claim. There, the section 1983 plaintiff challenged a prosecutor's use of his authority to drop or continue pending criminal charges against the plaintiff in an attempt to persuade him to drop a civil action against the county and others. Agreeing that "[t]he decision to initiate, maintain, or dismiss criminal charges [was] at the core of the prosecutorial function" protected by absolute immunity, the court affirmed the district court's dismissal of the plaintiff's section 1983 petition against the prosecutors. 733 F.2d at 1148; *cf. Myers v. Morris*, 810 F.2d 1437, 1466 (8th Cir.) (prosecutor's activities in plea bargaining context warrant absolute immunity), *cert. denied*, — U.S. —, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir.1981) (same).

We think similar reasoning disposes of Hike's claim here. We have stated that the absolute immunity here at issue shields an individual acting within the scope of his or her jurisdiction, even though perhaps exceeding it. *Blanton*, 258 N.W.2d at 311. This jurisdictional scope has been defined as including actions not " 'manifestly or palpably beyond [the prosecutor's] authority', but rather 'having more or less connection with the general matters committed to [the prosecutor's] control or supervision.' " *Yabarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 678 (9th Cir. 1984) (quoting *Briggs v. Goodwin*, 569 F.2d 10, 16 (D.C. Cir.1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978)). We are aware that Hall possesses no authority to dismiss criminal complaints without judicial sanction. *See* Iowa R.Crim.P. 27(1). In this case, however, we are presented only with Hall's deferral of a prosecution, not with his dismissal of the criminal charges upon which the prosecution is based. Whether Hall possessed the authority to dismiss the charges may be relevant to an issue of the enforceability of the covenant he entered into with Hike. *Cf. Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (covenant releasing potential 42 U.S.C. § 1983 claims in exchange for dismissal of criminal charges enforceable under some conditions). It is not relevant, however, to the issue before us today: whether, and to what extent, immunity from civil suit is available to Hall given the actions he actually took.

Hall's deferral of Hike's prosecution was undertaken pursuant to his prosecutorial function. Similarly, the "order" entered by Hall in Hike's file simply memorialized this decision. Such functions are quasi-judicial. *Blanton*, 258 N.W.2d at 308. Hall is, we think, consequently shielded absolutely from civil suit. Although Hike contends Hall's conflict of interest and violation of statute relating to that subject renders him liable, we have stated that such allegations do not suffice to defeat the cloak of immunity. *Id.* at 311.

**B.** *Defendant Bruner.* Hike claims damages resulting from the following actions taken by County Attorney Bruner: (1) altering the complaint against Hike so as to reduce, without court approval, the charge against Hike from third- to fifth-degree criminal mischief; (2) recommending, as a practice, dismissals or deferred prosecutions while also recommending that the defendant pay court costs, allegedly in violation of statute; and (3) failing to adequately train, supervise and control Assistant County Attorney Hall. The first two of these allegations concern activities which, notwithstanding Hike's claim that they were without judicial or statutory sanction, were clearly "intimately associated with the judicial phase of the criminal process" mandating that "absolute immunity apply with full force." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143. We note that if in fact Bruner did alter the complaint without court approval, he exceeded his jurisdiction under our rules. *See* Iowa R.Crim.P. 4(8)(a), 33. The decision as to what charges to bring, however, clearly lies within the scope of a prosecutor's jurisdiction, consequently affording him absolute immunity.

Hike's claim that Bruner's inadequate training, supervision and control of Hall resulted in Hall's activities which damaged Hike, however, is, at least at first blush, more resilient to Bruner's claim of absolute immunity. Certainly the training, supervision and control of subordinates by a county attorney are not per se prosecutorial functions intimately related to the judicial phase of the criminal process. The courts which have dealt with this issue, however, have keyed the supervising attorney's immunity to those activities of his or her subordinates which are the alleged cause of a plaintiff's damages.

In *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680–81 (9th Cir.1984), for example, the court was faced with allegations that a district attorney had failed to adequately train his subordinate attorneys. In affirming the dismissal of the plaintiff's section 1983 petition, the court determined that the supervising attorney was entitled to the same absolute immunity which shielded the subordinates in their performance of quasi-judicial activities. *Id.* at 680. *Hamilton v. Daley,* 777 F.2d 1207, 1213 (7th Cir.1985), presented the identical claim that a state's attorney had failed to adequately train his assistants. Agreeing with the district court's determination that the plaintiff's section 1983 claim was "frivolous," the court stated that "[s]ince absolute immunity protects prosecutorial decisions, supervision of the prosecutors who make these decisions is similarly immune." *Id.* at n. 5. Conversely, in situations in which assistant state's attorneys' activities are not quasi-judicial and consequently are clothed only with qualified immunity, that qualified immunity applies as well to a claim that the state's attorney inadequately trained the assistants. *See McCrimmon v. Kane County,* 606 F.Supp. 216, 225 (N.D.Ill.1985).

Here we have held that Assistant County Attorney Hall is properly accorded absolute immunity with respect to the challenged activities. By parity of reasoning, County Attorney Bruner is veiled with absolute immunity as concerns his training, supervision and control of Hall's challenged actions.

The district court, in denying Hall and Bruner absolute immunity, was understandably concerned with the provision of "sufficient checks on the prosecutor's zeal" for the criminal defendant. This concern was shared by the *Imbler* court which noted, however, that although

> immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty ... the alternative of qualifying a prosecutor's immunity would disserve the broader public interest.

*Imbler,* 424 U.S. at 427, 96 S.Ct. at 993, 47 L.Ed.2d at 142. The Court found sufficient safeguards contained both in the criminal analogue to 42 U.S.C. § 1983, *see* 18 U.S.C. § 242, and in the prosecutor's "amenability to professional discipline by an association of his peers." *Imbler,* 424 U.S. at 429, 96 S.Ct. at 994, 47 L.Ed.2d at 143; *see Iowa Code of Professional Responsibility for*

*Lawyers,* EC 7–13. Similar reasoning persuades us today.

Absolute immunity applies to those actions of Hall and Bruner challenged by divisions one and two of Hike's petition. The district court erred in denying the summary judgment motion as concerns those divisions, the only divisions involved in this appeal. Accordingly, we reverse that court's denial of summary judgment as concerns those divisions and remand this case with directions that the district court dismiss Hike's petition as to defendants Hall and Bruner.

REVERSED AND REMANDED WITH DIRECTIONS.