**Tanji Rai HANSON and Jacob Robert Ackley by Tanji Rai Hanson, His Guardian and Next Friend, Appellants,**

v.

**Becky Fitz FLORES and Scott County, Iowa, Appellees.**

No. 91–435.

Supreme Court of Iowa.

June 17, 1992.

Michael J. McCarthy of McCarthy & Lammers, Davenport, for appellants.

Thomas C. Fritzsche, Asst. County Atty., for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

LARSON, Justice.

Becky Fitz Flores, an assistant Scott County attorney, filed two support actions under Iowa Code chapter 252A (1983) against Robert Bain as the putative father of Jacob Ackley. Pursuant to an agreement with the putative father, the second action was dismissed by Flores. A third support claim, brought by another lawyer, was rejected by the court on the ground that Flores' dismissal of the second suit precluded further litigation on the issue of paternity. Tanji Rai Hanson and her son sued Flores and Scott County, alleging negligence by Flores in the prosecution of the second support action. The district court, concluding that the defendants were immune to suit, sustained their motion for summary judgment, and the plaintiffs appealed. We affirm.

As part of the first support proceeding, in 1984, Bain acknowledged paternity of Jacob and agreed to reimburse the state for the $1362.00 it had paid for him. In 1985, Flores brought a second action against Bain to recover ongoing support for the child. This time Bain denied paternity, despite his earlier stipulation to the contrary, and requested that blood tests be ordered. Hanson, as the mother of the child, Bain, and attorney Flores signed a stipulation to that effect, providing this with respect to the test results:

(3) If said analysis shall exclude Respondent from being a possible father of this child, (greater than 90% exclusionary), then this action shall be dismissed.

(4) If said analysis shall not exclude Respondent and the paternity index shows greater than 90% probability of paternity, then Respondent agrees to admit paternity and to pay child support in an amount to be determined at the time the test results are obtained.

(5) If the results are not either 90% exclusionary or 90% inclusionary, then the results shall be admitted into evidence for whatever probative value they may have and neither side will challenge the validity of the results nor the procedures employed in the analysis.

(6) Respondent shall initially pay the cost of blood drawing and analysis for the parties' child, to be taxed as costs at the conclusion of the case.

The blood tests disclosed that, because of unique characteristics in the blood samples, the chances of Bain being the father of the child were zero. Pursuant to the stipulation, Flores dismissed the petition with prejudice.

In 1988, a third action was commenced by a private attorney to recover support. Bain again denied paternity and asserted that the issue of paternity had been resolved conclusively against the plaintiff under the second action. The court agreed and dismissed the suit.

Tanji Rai Hanson, in her own right and as guardian of Jacob, then brought this action against Flores and Scott County, Iowa, alleging that Flores was negligent in allowing Bain to relitigate the issue of paternity, in the second support action, after it had been previously adjudicated in Hanson's favor on Bain's stipulation of paternity. The defendants moved for summary judgment asserting, in part, that the assistant county attorney and the county were immune from suit.

Prosecutorial immunity is well established in the law. The United States Supreme Court, in the context of a § 1983 case, has explained the rationale of the rule:

The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Imbler v. Pachtman,* 424 U.S. 409, 422–23, 96 S.Ct. 984, 992–93, 47 L.Ed.2d 128, 139 (1976) (footnote omitted).

Using the same rationale, this court has also adopted the concept of prosecutorial immunity. *See, e.g., Hike v. Hall,* 427 N.W.2d 158, 159–62 (Iowa 1988); *Moser v. County of Black Hawk,* 300 N.W.2d 150, 152–53 (Iowa 1981); *Burr v. City of Cedar Rapids,* 286 N.W.2d 393, 394–96 (Iowa 1979); *Blanton v. Barrick,* 258 N.W.2d 306, 309 (Iowa 1977). We have held that the immunity accorded county attorneys applies as well to assistant county attorneys, *Burr,* 286 N.W.2d at 395, and to the county employing the attorney, *id.* at 396.

This plaintiff concedes that prosecutorial immunity is well established and even concedes that it should apply, for policy reasons, in a suit by a putative father who has been the subject of a support action by the county attorney. However, she contends that the rule should be different when the attorney represented *her* in the underlying litigation; in that case, the attorney-client relationship is more akin to the relationship between a criminal defendant and court-appointed counsel, in which case immunity does not apply. *See Ferri v. Ackerman,* 444 U.S. 193, 203–04, 100 S.Ct. 402, 408–09, 62 L.Ed.2d 355, 363 (1979).

■ The defendants challenge this analogy and argue that an attorney-client relationship does not arise when a county attorney brings a support action under chapter 252B. *See* Iowa Code § 252B.7(4) ("[A]n attorney employed by or under contract with the child support recovery unit represents and acts on behalf of the state when providing child support enforcement services."). In addition, 441 Iowa Administrative Code 95.15(1), which implements section 252B.7(4), states,

an assistant county attorney ... employed by or under contract with the child support recovery unit represents only the state of Iowa. The sole attorney-client relationship for the child support recovery unit is between the attorney and the state of Iowa.

We need not decide whether an attorney-client relationship is established, for malpractice purposes, in cases brought by a county attorney under chapter 252B; prosecutorial immunity bars a suit by the plaintiff in any event.

■ Hanson points out that the prosecutorial immunity doctrine has largely been limited to criminal prosecutions; however, our cases have not supported that view. In *Hike*, for example, a criminal prosecution was only peripherally involved. In that case, we held that prosecutorial immunity protected a county attorney against the claim that he had negligently trained and supervised an assistant prosecutor. We held that, even though this was not a criminal prosecution, the county attorney "is veiled with absolute immunity as concerns his training, supervision and control of [the deputy's] challenged actions." *Hike*, 427 N.W.2d at 161. In reaching that conclusion, we relied on *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680–81 (9th Cir.1984), and *Hamilton v. Daley*, 777 F.2d 1207, 1213 (7th Cir.1985), which recognized prosecutorial immunity in similar circumstances.

Contrary to Hanson's argument, we believe a county attorney's role as a child support advocate advances societal interests, for immunity purposes, more like those of a prosecutor than a defense counsel. We believe this is implicit in the Supreme Court's ruling in *Ferri*, in which the Court held that court-appointed counsel are not entitled to immunity. It stated:

There is ... a marked difference between the nature of counsel's responsibilities and those of other officers of the court. As public servants, the prosecutor and the judge represent the interest of society as a whole. The conduct of their official duties may adversely affect a wide variety of different individuals, each of whom may be a potential source of future controversy. The societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large has long been recognized as an acceptable justification for official immunity. The point of immunity for such officials is to forestall an atmosphere of intimidation that would conflict with their resolve to perform their designated functions in a principled fashion.

*Ferri*, 444 U.S. at 202–04, 100 S.Ct. at 408–09, 62 L.Ed.2d at 362–63 (footnotes omitted).

The child support advocate, like the prosecutor, "represent[s] the interest of society as a whole," and there is a need in such cases to provide such officials "with the maximum ability to deal fearlessly and impartially with the public at large...." *Id.* at 203, 100 S.Ct. at 408, 62 L.Ed.2d at 363.

We believe that the rationale underlying prosecutorial immunity supports its adoption in this case. The state obviously has a strong interest in collecting child support, just as it has in the zealous enforcement of its criminal laws. A county attorney must be permitted to pursue support claims with the confidence that he or she will not be the subject of a suit by a disgruntled litigant, on either side, in the support case. The state's interest in fostering active support collections, from a policy standpoint, is certainly as compelling as its interest in encouraging a prosecutor to adequately train and supervise an assistant as in the *Hike* case, which recognized prosecutorial immunity.

The district court properly applied the doctrine of prosecutorial immunity here in granting summary judgment for the defendants.

AFFIRMED.

All Justices concur except CARTER, J., who concurs specially.

CARTER, Justice (concurring specially).

The opinion of the court, although mentioning the language of Iowa Code section 252B.7(4) and 441 Iowa Administrative

 

Code 95.15(1), which appear to insulate the defendant Flores from liability, does not rely on this statute or that rule in deciding the case. Instead, the court opines that the situation before us is more analogous to a prosecutor's immunity in bringing criminal prosecutions than it is to the situation of court-appointed counsel for criminal defendants who may be liable for malpractice. I do not share that view. I believe that the situation presented in the present case is in no way analogous to the area of prosecutorial immunity and, if comparisons are to be drawn, it is in fact more similar to the situation of court-appointed counsel for criminal defendants. Absent a statute there should be no immunity.

I concur in the result that the court reaches, however, because I believe that it is the purpose of section 252B.7(4) and the administrative rule that implements that statute to insulate assistant county attorneys from malpractice liability.