William J. BENSON, Plaintiff–
Appellant,

v.

Joan B. SAFFORD, et al., Defendants–
Appellees.

No. 00–2752.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 2001.

Decided June 28, 2001.

Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

William Benson filed this *Bivens* action pursuant to 42 U.S.C. § 1985 against several government officials (collectively "defendants") for violating his First and Fifth Amendment rights. The district court granted the defendants' motion for summary judgment on absolute immunity grounds. We affirm.

## I

Viewing the evidence in the light most favorable to Benson, as we must on review of a motion for summary judgment, *see Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 610 (7th Cir.2001), the relevant facts are as follows. Benson was convicted of three counts of federal tax evasion: one felony and two misdemeanor counts. The trial court sentenced him to four years' imprisonment on the felony count and two one-year terms of imprisonment on the misdemeanor counts. All three sentences were to run concurrently. Benson appealed his conviction to this court and we granted him a new trial. *See United States v. Benson*, 941 F.2d 598 (7th Cir.1991). By the time his appeal was decided, he had served over one year in prison—the maximum sentence for the misdemeanor counts. On remand, Benson was retried and convicted, again, on the same three counts. The district court imposed similar prison terms, the only difference being a suspended sentence of five years of probation for the second misdemeanor count.

Benson served a few more days in prison, was paroled, and began to serve his suspended sentence of probation. While on probation, Benson and his probation officer, Tony Morton (also known as Tony Smith), had several disagreements. On one occasion in particular, Benson requested permission from Morton to go to California to speak about tax matters at a conference. (Per the special conditions to his probation, Benson was required to seek Morton's permission before traveling out of state.) Although Morton initially denied Benson's request, he ultimately consented. As time progressed, Morton confronted Benson more than once about Benson's failure to disclose his financial information, as dictated by the special conditions to his probation. Benson refused to disclose the requisite information despite Morton's repeated insistence.

These conflicts ultimately led Morton and his supervisor, Raymond Raven, to initiate a probation revocation proceeding. In Benson's opposition to the proceedings, he argued (for the first time) that the district court's imposition of probation on the second misdemeanor count violated the Double Jeopardy Clause. The district court agreed with Benson that the imposition was unconstitutional and, accordingly, vacated his suspended sentence of probation.[1] The United States did not appeal.

Benson then filed this suit, alleging that the defendants violated several of his constitutional rights. In lieu of describing all of his claims, we list a representative few. He alleges that the defendants violated his First Amendment rights by conspiring to deprive him of his right to associate, to travel, and to speak. Benson also alleges that the defendants sought to twice punish him and revoke his probation in an effort to reprimand him for speaking about the Sixteenth Amendment and for promoting his book, which asserts that the amendment was never ratified. By way of exam-

---

1. We make no comment on whether the district court's legal conclusion was correct.

ple, he alleges that one defendant prosecutor in particular "sought and obtained an illegal term of punishment" and "requested the Court to impose travel restrictions on [him]." And, as to his probation officer, Morton, Benson claims that Morton threatened to incarcerate him if he spoke out (again) about the Sixteenth Amendment and sought also to modify the conditions of his parole to force him to "desist ... espousing that the Sixteenth Amendment was never ratified." The district court did not reach the merits of Benson's claims because, as noted, it granted the defendants' motion for summary judgment on absolute immunity grounds.

## II

We review de novo the district court's grant of summary judgment on account of absolute immunity. *Cervantes v. Jones,* 188 F.3d 805, 808 (7th Cir.1999).

Prosecutors and probation officers are absolutely immune from suits challenging conduct intimately associated with the criminal judicial process. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *Copus v. City of Edgerton,* 151 F.3d 646, 649 (7th Cir.1998) (probation officers). Benson concedes that the defendants' actions were sufficiently associated with the judicial phase of the criminal process such that, to the extent immunity should attach, absolute rather than qualified immunity would be appropriate. He contends, however, that "the complete lack of [personal and subject matter jurisdiction] from and after the expiration of [his] parole eliminates the ... absolute immunity with which [the] defendants would otherwise be cloaked." In support of his contention, he relies on cases establishing that judges who act in the "clear absence of jurisdiction" are not entitled to absolute immunity. *See, e.g., Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (holding that judge who ruled on parent's petition requesting that tubal ligation be performed on a minor was entitled to absolute immunity because the court upon which the judge sat was implicitly granted subject matter jurisdiction over such petitions). A quick review of the case law in this area reveals that his reliance is misplaced.

For one, it is not clear to us what bearing the sentencing court's jurisdiction (or lack thereof) has on whether a prosecutor or probation officer should be denied absolute immunity for his or her own conduct. The proper question is whether the prosecutor or probation officer acted in the clear absence of statutory authority. *See Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1491 (10th Cir.1991) (applying clear absence of authority doctrine to prosecutors); *Schloss v. Bouse,* 876 F.2d 287, 291–92 (2d Cir.1989) (same); *cf. Ernst v. Child & Youth Svcs. of Chester County,* 108 F.3d 486, 501 (3d Cir.1997) (applying clear absence of authority doctrine to agency attorney). Benson did not argue that the defendants acted in the clear absence of authority nor has he alleged any facts from which such an argument could be made. Thus he cannot seek refuge under this line of cases.

Second, Benson would not benefit from an application of the clear absence of jurisdiction doctrine. Under this exception to the general rule that government officials are entitled to absolute immunity from suit challenging judicial or quasi-judicial conduct, a judge may be held liable for conduct taken in the absence of subject matter jurisdiction. *See Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *John v. Barron,* 897 F.2d 1387, 1392 (7th Cir.1990). "Subject-matter jurisdiction refers to the *types of cases* a court is authorized to hear and every federal district court has jurisdiction over the subject matter of federal criminal prosecutions." *United States v. Sevick,* 234 F.3d

248, 251 (5th Cir.2000) (internal quotation marks and citation omitted) (emphasis added).

The fact that one of Benson's (suspended) terms of imprisonment was later found to have been imposed in violation of the Double Jeopardy Clause does not mean that the district court did not have subject-matter jurisdiction over his trial. *See Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 357, 20 L.Ed. 646 (1871) ("[The] erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not ... render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever.") *cited in Stump,* 435 U.S. at 359, 98 S.Ct. 1099; *cf. id.* at 352, 98 S.Ct. 1099 ("[I]f a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction [not in the clear absence thereof] and would be immune."); *United States v. Lawuary,* 211 F.3d 372, 380 (7th Cir.2000) (Easterbrook, J., concurring) (stating that laws affecting the maximum length of sentences "are unrelated to subject-matter jurisdiction.") To hold otherwise would require government officials to defend every exercise of legal judgment ultimately determined to be improper and would, therefore, defeat the purpose of absolute immunity.

### III

For these reasons, we find Benson's argument unavailing and AFFIRM the judgment of the district court.